THE STATE (CHARLES F. DURANT, Prosecutor,) *vs.* THE
MAYOR AND COMMON COUNCIL OF JERSEY CITY.

1. A power delegated by the legislature to a municipal corporation to take private property for public use must be strictly pursued.

2. Where the charter directs the common council to appoint a time when persons interested in an application for opening or altering any street will be heard, it is not sufficient for council to devolve that duty on the clerk.

3. Where the charter directs that persons interested, &c., shall be heard before council, it is an excess of authority in the council to limit the right to objections made in writing.

4. Charter provides that no ordinance shall be passed by the common council, unless introduced at a previous stated meeting; and an ordinance being introduced at an adjourned meeting, held that it should appear that it was an adjourned meeting of a stated meeting.

5. It need not appear that a resolution of the common council of Jersey City appointing commissioners in the place of others resigned, was approved by the mayor.

6. It should appear upon the record that the commissioners appointed were judicious disinterested freeholders residents in said city as required by the charter.

7. Form of commissioners' report, in what particulars defective.

*Certiorari* to set aside the proceedings of the city authorities of Jersey City in opening a street.

Argued at June term, 1855, before the CHIEF JUSTICE, and POTTS, ELMER, and VREDENBURGH, Justices; *Whitehead* and *Zabriskie*, for plaintiff in *certiorari*, *Scudder* and *McClelland* for defendants

POTTS, J. This was a proceeding, had under the charter of Jersey City, to take private property for the purpose of a public street, to be called Montgomery street, in said city. The prosecutor, Charles F. Durant, a part of whose property, consisting of lots and buildings thereon, is condemned by the commissioners, complains of the proceedings as in divers respects illegal. The points presented and discussed may be resolved into two subjects of inquiry.

1. Whether the proceedings of the city authorities in passing the ordinance were in accordance with the charter, and—

2. Whether the commissioners were duly appointed and qualified, and whether their proceedings were legal.

By virtue of the right of eminent domain, or inherent sovereign power, the legislature has the authority to take private property for public uses, and for public uses only, subject to just compensation. When this power is delegated by the legislature to a municipal or other corporation, its exercise is subject to the inflexible rule, that the power must be strictly pursued, and ordinarily it must appear to be so on the face of the proceedings. *Rex* v. *Croker, Cowper* 30 ; *Van Winkle* v. *Railroad Co.*, 2 *Green* 166. Though perhaps, in the case of municipal corporations, it may be sufficient if it appear in that or some other way. This rule is applicable in the present case to the proceedings of the common council as well as to those of the commissioners. Both were acting under a special delegated power derived from the legislature. And the exercise of this power by the common council was in the nature of a judicial proceeding, and therefore clearly reviewable on *certiorari*.

With these preliminary remarks, I proceed, first, to examine that class of reasons assigned for reversal in this case which relate to the proceedings of the common council.

1. The 55th section of the charter of Jersey City enacts, that "when any application shall be made for opening, altering, or widening any street, &c., the common council shall appoint a time when persons interested therein may be heard before them, or the appropriate committee, on the merits of such application ; and shall give notice of such application, and the time and place of hearing," &c. Upon inspecting the proceedings, it appears that, instead of appointing a time for the hearing,

the common council simply directed the clerk " to give the required notice for objections ;" and it seems that he fixed upon the regular meeting of the common council, on the 2d September ensuing, as the time, and gave notice accordingly. This omission on the part of the council is objected to as error.

2. Upon inspecting a copy of this notice, given by the clerk, it appears to be a notice that, at the time and place mentioned, council would hear and consider any objections to said improvements that might be presented in writing. And it is further insisted that the council had no power, under the charter, thus to limit the right to make objections.

Now, in failing to appoint a time for hearing, the common council undoubtedly omitted to comply with one of the express directions of the charter ; and in the notice that they would hear such objections as might be presented in writing only, for that is the effect of it, they clearly exceeded their authority. It may be that neither of these departures from the directions of the charter were calculated seriously to interfere with the rights of the property holders whose lands were to be taken ; yet, in point of fact, the power delegated to the common council was not strictly pursued in these particulars, and their jurisdiction to pass the ordinance therefore fails. The appearance of Durant before the council at the time, and his presenting a written remonstrance, does not cure the difficulty, for he did it expressly reserving all legal objections.

3. Again, by the 36th section of the charter, it is provided that no ordinance or by-law shall be enacted or passed by the common council, unless the same shall have been introduced before the said common council at a previous stated meeting. The distinction between stated and special meetings is defined in the 38th section. A stated meeting is one appointed by the common council, a special meeting is one called by the mayor or three aldermen.

The record shows that this ordinance was introduced at an adjourned meeting of the council, held on the 21st April, 1852; but it is objected that it does not appear whether this was an adjourned meeting of a special or stated meeting. If it was the former, the adjourned meeting was but a continuance of the special meeting, and the ordinance, being introduced at such a meeting, was never legally before the council. This may seem like a, very technical exception; but, bringing it to the test of the governing rule in these cases, it is nevertheless well taken. For it does not appear upon the face of the record, or in any other way, that the provision of the charter was complied with; it does not appear that the power has been strictly pursued.

Several other objections are taken to the proceedings in reference to the ordinance in question.

1. That council proceeded to act on the application for the street, and to pass the ordinance without the proof of publication of the notice required by the charter. 2. That the notice was defective; and 3. That it did not appear that the ordinance, when passed, was presented, as required by the charter, to the mayor for his approval. But it appears that, in point of fact, the notice was duly published; it was sufficiently accurate and intelligible; and the records show that the ordinance had been approved by the mayor. These objections, therefore, are not well taken.

The second class of objections relate to the appointment, qualifications, and proceedings of the commissioners.

1. It is insisted the commissioners were not legally appointed. Three persons, Messrs. Ward, Davenport, and Alexander, were named commissioners in the ordinance. Two of them, Ward and Alexander, declined acting, and the common council, by resolution, not submitted to or approved by the mayor, appointed Messrs. Dummer and Traphagen in their places. There is nothing in the char-

ter which prescribes the mode by which council shall appoint the commissioners. It does, indeed, provide that every resolution affecting the interests of the city shall, before it takes effect, be presented to and approved by the mayor. This language of the charter undoubtedly extends to that class of resolutions which are in the nature of laws, or involve measures which affect the finances, or operate upon the property or other interests of the corporators; but I am not clear that it applies to the mere appointment of agents to carry such laws and measures into effect.

2. It is objected that it nowhere appears upon the record or proceedings before us that the commissioners appointed were " judicious disinterested freeholders, residents of said city," as required by the charter. This objection is sustained. The charter expressly requires these qualifications, and it does not appear that the commissioners appointed possess them.

3. It is objected that the principle upon which the damages sustained by the prosecutor have been assessed is illegal, and contrary to the provisions of the charter. In section 55, of the charter, it is enacted, that the commissioners shall " estimate and report the value of lands taken for such improvements and the erections thereon, and the damage as aforesaid done by taking the same. The second section of the ordinance, in directing the assessment of damages, follows the language of the charter. But in the fourth section, which provides for opening the street, it is enacted that all buildings and erections of every kind on said street shall be removed therefrom by the owners thereof, on or before the first of May, 1853, on notice; and if not removed by the owners, the committee on streets shall remove them. The counsel for the prosecutor alleges, that in assessing the damages, the commissioners only allow the estimated cost of removing the buildings, and not the damage which would be done by taking them. If this is so, and I did not understand

that it was denied on the argument, it is error.    The charter directs expressly that it is the value of lands taken for the improvement, and also the value of the erections on the land so taken, that is to be paid for.    The legislature has presribed the rule, and the common council have no power to change it.    But it is not apparent, on the face of the commissioners' report, for what or upon what principle the damages were assessed, and hence exceptions are taken.

4.    To the sufficiency of the report, that it does not show, except by the schedule appended, that any damages were assessed by the commissioners for lands and erections thereon taken, nor that any amount was assessed by them for benefits ; that it does not contain an estimate of the whole cost of the improvements, according to the best judgment of the commissioners, but furnishes merely a series of figures upon which a calculation of the cost may be made ; and that it does not appear, by the report, what interest and estate the several owners of property taken have in the same, but only what leases, mortgages, and judgments were in existence affecting said lands.    In all these particulars the report is fatally defective.    There is nothing to show that the commissioners have discharged their duties according to the directions of ·the charter. The schedule, which is annexed to, and made part of the report, does not supply the defects complained of.

The proceedings must be set aside.

The CHIEF JUSTICE, and ELMER and VREDENBURGH, Justices, concurred.

CITED in *State* v. *Newark*, 1 *Dutch.* 495 ; *State* v. *Jersey City* 2 *Dutch.* 447 ; *State* v. *City of Hudson.* 3 *Dutch.* 216 ; *State* v. *Jersey City,* 4 *Dutch.* 502 ; *State* v. *Council of Elizabeth,* 1 *Vr.* 367 ; *State* v. *Orange,* 3 *Vr.* 55 ; *State* v. *Town of Union,* 3 *Vr.* 345 ; *State* v. *Jersey City,* 5 *Vr.* 434 ; *State* v. *Mayor of Bayonne,* 6 *Vr.* 479 ; *State* v. *Newark,* 7 *Vr.* 173 ; *State* v. *Trenton,* 7 *Vr.* 501 ; *State* v. *City of Passaic,* 9 *Vr.* 172.